UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | Case Number: 14-03860-dd |
| | ) | |
| North Area Taxi, Inc. | ) | Chapter 11 Proceeding |
| | ) | |
| Debtor | ) | |

DISCLOSURE STATEMENT

**Pursuant to the terms of the Bankruptcy Code, this disclosure statement has been presented to and approved by the Court.  Such approval is required by statute and does not constitute a judgement by the Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.  The Plan represents a legally binding arrangement and should be read in its entirety, as opposed to relying on the summary in the Disclosure Statement. The information contained herein has not been the subject of a certified audit.  This disclosure statement has been prepared by use of information provided by the debtor and has been prepared based upon information available to the debtor.**

I-A.  HISTORY AND DESCRIPTION OF DEBTOR

The debtor came into existence on July 23, 1975 having been formed under the laws of the State of South Carolina.  The debtor has operated since 1975.  The business appeared to be operating successfully until early 2014.  The debtor has recently been experiencing some financial issues for years.  The debtor experienced several very large personal injury cases that strained the ability of the debtor to make settlements.  The type of business the debtor is in will always have a certain amount of small accidents with personal injuries and/or property damage, but, the size of claims and the number of claims overwhelmed the resources of the Debtor.

The debtor is and has been a self-insured taxi company and has maintained sufficient funds on hand to remain in compliance with the rules and regulations of the entities of the State of South Carolina.  Debtor's management determined that it could not possibly pay for the defense of all of the suddenly pending lawsuits and/or pay for the settlements in a timely manner.  The failure to pay the claims would have caused the debtor to be no longer self-insured.  Debtor believes that the expense of ordinary insurance is cost prohibitive without such large deductible as to make such insurance worthless to the debtor.

Debtor leases cabs owned by it to independent contract drivers who pay a set amount to drive the cab on a daily or weekly basis.  As part of that agreement, the debtor also insures, to the extent of its self-insurance coverage, the driver from loss or damage.

## I-B.  FINANCIAL INFORMATION OF THE BUSINESS

Thomas D. Lee is the sole stockholder of the corporation.  Mr. Lee has not taken a salary from the business in several years.  Additionally, the debtor has not paid rent on a location from which it operates its business.

The accounting method used to produce the financial information is a cash basis reporting of actual income and receipts as incurred or expended.  The accountant used in compiling this information was Phillip Fleishman.

## I-C.  ASSETS AND LIABILITIES AS OF JANUARY, 2015

Assets of Debtor:

| | | |
|---|---|---|
| Vehicles | | $10,000.00 |
| Cash on hand | Operating Account | $ 6,500.00 |
| | Insurance Account | $38,458.90 |
| | CD | $50,000.00 |

LIABILITIES OF Debtor are shown in the list of creditors listed in the plan.  The non-personal injury claims owed by the debtor were paid by the co-debtors to protect their credit rating.

At the time of filing, an indebtedness was owed to NBSC for credit card debt.  These debts were cosigned by individuals who have paid the amounts owed in full.  The plan of reorganization will not pay this debt nor reimburse the individuals who made these payments.

| | |
|---|---|
| Personal Injury claims remaining at this time as scheduled. | $85,050.00 |
| Additional Personal Injury claims estimated amount | $45,000.00 |
| Total amount estimated to be retained for payments to Unsecured Creditors | $78,000.00 |

Debtor has a legal duty to also defend the independent contract drivers of the vehicles and any settlement of the debt through this plan of reorganization shall also release the driver operating the taxi when the accident occurred.

The values used in the Disclosure Statement are taken from information given by Thomas D. Lee and are believed to represent the net amount to be received if these assets were liquidated.

## I-D.  PRESENT AND PROJECTED EARNINGS

| Month/year | Income | Expenses | Net Income |
|---|---|---|---|
| March, 2015 | 9,825.00 | 5,576.16 | 4,248.84 |
| February, 2015 | 8,041.00 | 23,027.52 | -14,986.52 |
| January, 2015 | 8,361.00 | 4,806.72 | 3,554.28 |
| December, 2014 | 12,522.00 | 7,387.47 | 5,134.53 |
| November, 2014 | 9,546.00 | 5,780.43 | 3,765.57 |

| | | | |
|---|---|---|---|
| October, 2014 | 9,493.00 | 5,241.80 | 3,751.20 |
| September, 2014 | 12,306.50 | 5,571.39 | 5,635.11 |
| August, 2014 | 9,242.00 | 5,055.00 | 4,187.00 |

The debtor has been operating on a false profit basis during this Chapter 11 case as it has not been paying for the replacement of vehicles on an ongoing basis. The debtor will have to replace vehicles or it will not be able to compete with the other taxi companies in the area. Additionally, the debtor must put aside funds to maintain its self-insured status and to pay for expected annual personal injury and property claims.

A reasonable monthly set aside for vehicle replacement would be $2,500.00 per month and a reasonable set aside for maintenance of the insurance reserve would be $1,500.00. This would cause the debtor to expend an additional $4,000.00 per month in addition to average expenses.

The debtor relies on a management company known as East Coast Management, LLC. This company has the same ownership as the debtor. East Coast Management, LLC oversees the accounting issues, has entered into an agreement to use another company that takes all calls to the debtor for services and contracts with another company to maintain the taxis in proper condition. Common expenses are divided among North Area Taxi, Inc and Ace Transportation Leasing. Expenses such as parts replacement are charged to the entity using the part whenever possible. East Coast Management, LLC deducts for its expenses of management 54.21% of monies received with the remainder paid over to the debtor when East Coast Management LLC receives payment.

When the debtor receives direct payment which is more common, then the debtor pays 54.21% of monies received to East Coast Management, LLC. This arrangement is expected to continue post-petition as this allows debtor to more easily determine the value of or if the debtor should continue its operations.

Ms. Wilma Lee, the other possible equity holder in this debtor, has advised Mr. Thomas Lee that she is giving to him any interest in the business that she possesses. Due to her age, health and desire to retire, she no longer wants any part of the business. For that reason, Mr. Thomas Lee is being treated as the sole owner of any stocks or interest in this debtor.

### I-E.  SOURCE OF INFORMATION

Thomas D. Lee provided the information used in the compilation of this information. These records have not been audited and although believed to be accurate the debtor will not guarantee

the absolute accuracy of these numbers.

### I-F.  ADMINISTRATION EXPENSES

There are limited administration expenses in this matter as the debtor pays a fee to a management company already to manage most of the expenses of the business.  The only administration expense expected will be amounts due to the US Trustee and to the debtor's attorneys and accountant.  It is not expected that these amounts will be such as to impair the future of the debtor or its ability to continue in business and pay the plan payment and operating expenses.

Debtor will be able to pay administrative expenses to the United States Trustee prior to or upon confirmation of the plan.

Fees to Bennett Crites are estimated to be in the range of  $11,000.00

Fees to D. Nathan Davis are estimated in the amount of  $15,000.00

Fees to Mr. Fleischman have been paid as incurred and debtor will be able to pay these fees until such time as debtor is able to take over day to day accounting needs.  All professionals are willing to accept payment by the debtor over a period of time to not endanger the future of the debtor nor its ability to make payments under a confirmed plan.

### I-G.  LIQUIDATION ANALYSIS

The debtor's only assets other than cash are vehicles which are valued at $10,000.00.  These vehicles have many miles and are not in a condition that individuals or even another cab company would pay anything for the vehicles.  If this plan is not approved, it is believed that after litigation expenses to determine values of claims, little or no funds would remain from the cash on hand, both in the operating account and in the insurance fund account.

### I-H.  ANTICIPATED LITIGATION

 No preferential transfers have been identified and debtor does not anticpate discovering such in the future. The value of the actual or anticipated recovery from preferential or voidable transfers is $0.00 Debtor may encounter fees for litigation of claims for which no amount has been agreed to or is disputed.

Debtor will file objections to the proofs of claims as filed as noted in the plan list. Debtor is hopeful that after this plan is confirmed, the creditors with disputed claims will also agree to a settlement which can be incorporated in the plan payment.   Debtor is offering to pay creditors for claims that are listed as contingent or disputed as it has a duty to also protect and indemnify the drivers of the vehicles involved in an accident.  Paying this amount to creditors listed as disputed or contingent causes the

creditor to be bound to not litigate against the driver of the vehicle as well as the debtor allowing debtor to obtain closure for those claims.

## I-I PLAN FORMULATION AND FUTURE MANAGEMENT

The plan was formulated without input from the creditors' committee. No such committee was formed as there was insufficient interest on the part of the creditors to form such a committee. The future management of the debtor will be Thomas D. Lee the compensation will be initially be $0.00 until the debtor is able to reconstruct itself so that the debtor can pay rent and a salary to Mr. Lee.

<u>The debtors recommend that you vote to approve the Plan.</u>

## II-A.  SUMMARY OF PLAN OF REORGANIZATION

Reference made to the Plan which is attached hereto as Exhibit "A" for details concerning the classification and treatment of holders of claims of interest against or in the Debtor(s). All terms defined in the Plan have the same meanings herein unless otherwise noted.

The Plan is based on the assumption that the Debtor(s) will continue to operate its taxi services. The completion of the Plan is subject to numerous conditions, including:

a. The ability of the Debtor to continue to maintain its self-insurance status, obtain independent contract drivers who do not cause an unreasonable amount of damage to third parties.

b. The absence of legal actions and threats of legal actions to restrain the Plan.

The plan is expected to last for a period of Six and one-half (6.5) years or less and payments will commence 30 days from the date of the entry of an Order confirming the plan.

c. The driver of the taxi will be released from all liability as a part of the payment of claims.

1. Class one creditors are creditors holding administrative claims. They will be paid at the effective date of the plan unless the amount is unknown or must be approved by the Court. In that event, the indebtedness will be paid upon approval by the Court. This class is unimpaired.

2. Class two creditors are those entitled to priority status. There are no known priority creditors at this.

3. Class III creditors are the unsecured claimants holding personal injury or property damage claims against the debtor. This class will be paid in full at the rate of at least $1,000.00 per month until it is paid 40% of its claims as scheduled and/or pursuant to the POC filed by creditor.

## II-B.  ALTERNATES TO PROPOSED PLAN OF REORGANIZATION

1. Chapter 7 proceedings would provide little or no monies to any unsecured creditors.

The sellable assets of the Debtors are worthless except to an operating taxis company. These vehicles would have to be repainted and otherwise repaired making it unlikely that any taxi company would purchase these cabs. Taxi licenses are not limited in South Carolina so the operating certificate of the company and individual cabs have no known value to any third party or competitor.

    2. Another plan of reorganization is not considered viable as no other source of funds would be available.

### III. DESCRIPTION OF POSSIBLE SUITS

No lawsuits are expected to be brought by the debtor against any parties. There are several claims that are disputed and may cause the creditor to file a lawsuit if one had not been filed at the time of the filing of this case.

### IV. APPROVAL OF PLAN

    1. In order to obtain confirmation of the Plan by the Bankruptcy Court, The Plan must be found by the Bankruptcy Court to meet the requirements of 11 U.S.C. Section 1123.

A ballot is provided to each creditor who will be asked to vote for acceptance of this plan. An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless at the time of or before such solicitation, there is transmitted to such holder, the plan or summary of the plan, and a written disclosure statement, approved after notice and a hearing, by the Court containing adequate information. The Court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

A Creditor or Interest holder may vote to accept or reject the Plan by filling out and mailing the ballot which has been provided to him. Only the votes of classes of creditors and Interests whose claims or Interests are impaired by the Plan will be counted in connection with confirmation of the Plan. Generally, and subject to the specific provisions of Section 1124 of the Code, this includes any Creditors who, under the plan, will receive less than payment in full in cash of the allowed amount of their respective Claims on the "Effective Date: as defined in the Plan.

Section 1126 of the Bankruptcy Code states that an impaired class is deemed to have accepted the Plan if (I) at least two-thirds in amount and (ii) more than one-half in number of the Allowed Claims or Interests of voting class members have voted for adoption of the Plan. Further, if an impaired class does not vote to accept the plan, the Bankruptcy Court may still confirm the Plan if it determines that the Plan does not discriminate unfairly and is fair and equitable to such class.

The Debtor and others may solicit your vote. The cost of any solicitation by the Debtor will be borne by the Debtor. The ballot has been enclosed and it is asked that you vote in favor of the plan of the debtor. The ballot should be returned to as soon as possible.

    2. All classes of creditors who are impaired must vote for, or be deemed to have voted for, the Plan. Under the Bankruptcy Code, so long as the Plan is accepted by the holders of claims or interest in at least one class, the Plan may be confirmed by the Bankruptcy Court by "cramming down" the various classes. The provisions for effecting a cram-down are very detailed and complex, but essentially if the cram-down provisions were utilized, holders of claims and interest in certain classes might be compelled to realize what is proposed in the Plan.

    The Debtor has not decided whether the cram-down provision of the Bankruptcy Court will be utilized to obtain confirmation of the Amended Plan if the holders of claims or interest do not accept the Amended Plan.

## V - MISCELLANEOUS PROVISIONS

    1. The debtor has the following affiliate relationships: NONE

    2. The debtor does not intend to issue any securities pursuant to the plan of reorganization. There is therefore no issue of whether the issuance of securities in question would be exempt from the requirements of federal and state securities law.

    3. All tax returns which are due without extension as of the date of this disclosure statement are filed.

    /s/ D. Nathan Davis
D. Nathan Davis
Attorney for the Debtor
Charleston, South Carolina    12 Carriage Lane, Ste A.
Charleston, SC 29407
May 4, 2015    (843) 571-4042
District Court ID #438
nathan@davislawsc.com